CASE 52—PETITION ORDINARY—OCTOBER 21

# Williamsburg Boom Co. v. Smith.

APPEAL FROM WHITLEY CIRCUIT COURT.

1. GRANTS OF LAND UPON NAVIGABLE STREAMS above tide-water vest the right to the soil to the thread or the center of the stream in the grantee, unless the terms of the grant clearly show an intention to stop at the margin of the river, subject, however, to the right of the public to use it as a highway; and the proprietor has a right to use the banks and water in any way not inconsistent with the public easement.

A patent appropriating the bed of a river was void, the same land being embraced by prior patents to land on each side of the river calling for the river and its meanders, thereby vesting in each grantee the right to the soil under the water on his side of the river to its thread or center.

2. IF THE RIPARIAN OWNER HAS A MILL UPON THE STREAM, he may appropriate the bank for the purpose of receiving logs, and may construct a log-way or other structure extending into the river for the purpose of facilitating their removal, and thus appropriate a portion of it, even though his land extends only to low water-mark, provided he does not interfere with the easement of the public; and if he permits another to do so, there is no ground for complaint.

3. ADVERSE POSSESSION.—In this action by appellee to prevent the use or occupation by appellant of the river in controversy, the evidence is not sufficient to support the finding of the jury that the plaintiff had been in the adverse possession of the bed of the river for more than fifteen years.

W. LINDSAY FOR APPELLANT.

1. Grants of land bounded on rivers or upon the margin of the same, or along the same above tide-water, carry the exclusive right and title of the grantee to the center of the stream, unless the terms of the grant clearly denote the intention to stop at the edge or margin of the river.

The two patents of 1801 and 1815 cover and embrace the whole of that portion of the river bed covered by the patent of 1837. which is, therefore, void. (Berry v Snyder, 3 Bush, 266; Cameron v. Beatty, MS. Op, Feb. 5, 1885; Miller v. Hepburn, 8 Bush, 326; Jones v. Soulard, 24 How., 63; Banks v. Ogden, 2 Wallace, 67.)

2 The riparian owner who keeps a saw mill, and receives his logs by the river, whether his lands extend beyond low water-mark or not, has the right to appropriate his bank to the purpose of receiving logs for

Williamsburg Boom Co. v. Smith.

the use of his mill, and the right to construct log-ways into the river, and thus to appropriate a portion of it, provided only he does not impede navigation. (Thurman v. Morrison, 14 B. Mon., 374.)

3. Riparian rights do not attach to the ownership of the bed of the river, but to the ownership of the banks or shores.   (Gould on Waters, pp. 275-6.)

4. These rights, having attached to the grantee in the patent of 1801, could not be divested by a subsequent grant.   (Yates v. Milwaukee, 10 Wall., 504.)

5. In no event can appellee have any title or right to the water, or to the surface of the same, disconnected from an actual appropriation of the use.   (Morrison v. Thurman, 17 B. M., 264.)

6. There has never been any law in Kentucky authorizing persons to patent the beds of streams disconnected from the lands on either side, and thus defeat the appurtenant riparian rights.


C. W. LESTER AND HARGIS & EASTIN FOR APPELLEE.

1. The answer admits, by failing to deny, that the appellant is in the actual possession of the land in controversy.

2. Ejectment is the proper remedy to recover the possession of land covered by water and in such an action even water rights and privileges may be determined.   (Wood on Water-ways, sec. 471.)

3. Neither the Charles Gatliff patent nor the James Gatliff patent includes the bed of the river to the thread of the stream.   So much of the opinion in Berry v. Snyder as is relied upon by appellant to show that they do is *dictum*.   (Sanders v. McCracken, Hardin's Rep., 267; Fleming v. Kenny, 4 J. J. Mar, 157.)

4. Neither Charles Gatliff nor his vendees, or those claiming under his patent of 1801, after their long acquiescence in and implied acknowledgment of the validity of the Andrew Craig patent of 1837, can now assert any claim inside of its boundary.   (City of Louisville v. Bank of United States, 3 B. M., 138; Byersdorfer v. Schultz, 5 Ky. Law Rep., 927-8.)

5. A person entering on land under a deed of conveyance specifying the boundaries, is in possession to the extent thereof.   Therefore, the appellee is entitled to the land he claims by reason of the long continued uninterrupted possession under the deeds under which he claims. (Thomas v. Harrold, 4 Bibb, 563; Mowry v. Waugh, 1 Mar., 452; Jones v. Chiles, 2 Dana. 25; Campbell v. Thomas, 9 B. M., 83.)

6. While appellant has the right to use the Cumberland river as a public highway, just as it has the right to use any public road in the county, it can not lawfully erect any permanent structure on the river within appellee's boundary.


JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

It is the rule of the common law that the right of land-owners, binding upon tidal waters, extends only to ordinary high water-mark; and that the bed beyond it belongs to the sovereign or State for the use of the public; but grants of land upon navigable rivers above tide-water vest the right to the soil *ad filum aquæ* in the grantee, unless the terms of the grant clearly show an intention to stop at the margin of the river, subject, however, to the right of the public to use it as a highway; and the proprietor has a right to use the banks and water in any way not inconsistent with the public easement.

The courts of most of the States, as well as the Supreme Court of the United States, have followed this rule, and it has been adopted in this State. (Berry v. Snyder, &c., 3 Bush, 266.)

The patent to Charles Gatliff, upon the north side of the Cumberland river, for 100 acres, issued in 1801, and that of James Gatliff for 125 acres, opposite to it upon the south bank, dated November 24, 1815, each call for the river and its meanders; and thereby the right to the soil under the water (conceding that public policy did not forbid its appropriation) vested in each grantee upon his side of the river to its thread or center, subject, of course, to the public easement in it as a highway. The patent to Andrew Craig of 1837 appropriated the bed of the river only, save a small portion of V shaped land running back from it at one point, and which is not in contest; and to the extent that this patent conflicted with the two above named, it is void, because it embraces land previously patented.

The appellee, John Smith, claiming under it, brought

this action of ejectment against the Williamsburg Boom Company to recover the bed of the river between two certain points; and between which the Charles Gatliff patent called for the meanders of the river upon the north side and the James Gatliff patent upon the south side. It appears that the Boom Company have leased from the present owners of the Charles Gatliff land the banks along it to low water-mark, they supposing that they owned only to that point, and not to the thread of the river, because of the Andrew Craig patent; and that it has erected upon that side of the river large log booms, to receive the logs, which come down the river, until they can be manufactured into lumber by the Cumberland River Lumber Company, its mills being located upon the opposite side of the river, and it being a large stockholder in the Boom Company. These booms are not fastened to the bottom of the river. They are movable structures, made of logs, and held in place by ropes or "sheers" fastened to them and to the north bank of the river. The "sheers" are movable, made of logs, and answer as ropes both to secure the booms to the adjoining bank, and also to keep them the proper distance from it. It appears that some of them have been taken across the river and fastened to the opposite bank, and then attached by ropes to the booms upon the other side of the river, thus aiding to keep them in proper place; but these sheers are moved about as occasion may require.

Upon the south side of the river, and opposite to the booms, the Cumberland River Lumber Company have "pockets" for holding the logs after they are brought

from the booms until they can be manufactured into lumber.

This action was brought to prevent the use or occupation by means of these booms and sheers by the Boom Company.

Prior to its institution, the appellee, Smith, had become the owner of the James Gatliff land upon the south side of the river, or at least of that portion of it lying opposite to the booms, and had sold it to several parties ; but when this action was brought, the Cumberland River Lumber Company was the owner, or in control, of all of it. The deeds from Smith, with perhaps one exception, call for low water-mark.

The owners of the Charles Gatliff land do not appear to have done any thing which defeats their right to the soil to the center of the river. It is true that they supposed this right extended only to low water-mark, owing to the existence of the Craig patent; but the evidence shows that they always claimed all that they were entitled to under their grant. We find, therefore, that the appellee, Smith, is, under a void patent, suing for the bed of the river; and for land which belongs, upon the one side *ad medium filum*, to those who hold under the Charles Gatliff patent ; while, upon the other side, the appellee, after acquiring the right under the James Gatliff patent to the thread of the river, had, before the bringing of this action, parted with the land at least to low water-mark, thereby vesting in the vendees if not the right to the center of the river, at least the control of the bank, subject, of course, to the easement of the public in a navigable stream.

The jury, by a special verdict, found that the appel-

lee, and those under whom he claimed, had been in the actual possession of the entire bed of the river for more than fifteen years; that those holding under the Charles Gatliff patent had claimed only to the margin of the river; that the portion of the river covered by the Craig patent was called for in the two Gatliff patents; that those holding under the Charles Gatliff patent had been in possession for sixty years, and that the appellant did, at the bringing of this suit, have possession of a portion of the river on the south side of the center of it, but this possession was opposite the river front, which the appellee had conveyed away.

It is manifest that there was no testimony whatever to support the finding that the appellee had been in the actual possession for fifteen years of the entire river bed. He had no valid title whatever to the north half of it. If constructively in possession of the entire bed by claim of it, yet the Charles Gatliff title was elder and superior to any such claim.

As to the north side of the river, the title, subject to the right of the public in it as a highway, was in the owners under the Charles Gatliff patent, and they had leased the banks upon that side of the river to the appellant for the purpose of fastening its booms to them, and storing its logs against their land; and beyond question, the appellee had no right of recovery as to that side of the river.

Upon the other side, he had sold the land at least to low water-mark. The right to land under water extending from the shore toward the center of the stream has always been held to be appurtenant to the shore; but even if the grants from the appellee did not

pass such right, yet his vendees certainly became entitled to all the riparian rights which, by law, attach to the owner whose lands bind upon a navigable stream; and the "sheers" that are upon that side are in front of the land thus acquired by the Cumberland River Lumber Company. Even if the land of the riparian owner extends only to low water-mark, yet if he has a mill upon it, he may appropriate the bank for the purpose of receiving logs, and may construct a log-way or other structure extending into the river for the purpose of facilitating their removal, and thus appropriate a portion of it, provided he does not interfere with the easement of the public; and if he permits another to do so, there is no ground of complaint. The "sheers" upon that side of the river were as movable as boats; they were not permanent structures, and the findings of the jury that the appellee had been in the actual possession of the entire bed of the river for fifteen years prior to the bringing of the suit, and that the Boom Company were in possession of a portion of the river upon the south side of the center of it, were not sustained by any evidence in the case.

As to the south side of the river, the Boom Company was at most only exercising a riparian right by the consent of the owner of the adjoining bank; and the appellee, after selling land to the Lumber Company for milling purposes, can not be allowed to defeat the use in the way he has attempted.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.