Case 13.—PROCEEDINGS BY ANSE WARNER AGAINST THE FORD LUMBER & MANUFACTURING CO. TO CONDEMN LAND FOR A FERRY LANDING.—May 30.

## Warner v. Ford Lumber & Mfg. Co.

Appeal from Madison Circuit Court.

W. W. STEVENS, Special Judge.

From a judgment awarding damages plaintiff appeals. Reversed.

1. Navigable Streams—Judicial Knowledge—Rights of Public— This court will take judicial knowledge that Kentucky river is a navigable stream, and this fact must be recognized by individuals. The public, for purposes of navigation, is entitled to the free and undisturbed use of every part of the stream from bank to bank, and of such accessibility as to render it capable of navigation by boats or the floating of logs and for all purposes of travel and transportation.

2. Ferries—Highway—Riparian Owners—Relative Rights—Booms —A ferry is a highway across a stream by boat instead of

Warner v. Ford Lumber & Mfg. Co.

a bridge, and is a public rather than a private right. Though the owner of a ferry in operating it performs a public service, he has no exclusive right to the use of the stream crossed by his ferry. He has the same right to navigate it that every other citizen of the State enjoys, and such right cannot be made subservient to that of riparian owners to maintain booms upon the surface of the stream or near the bank, however necessary the same may be to their business.

3. Same—Subserviency to Public Easement—While a riparian owner may maintain its boom on a navigable stream by virtue of its ownership of the land bordering thereon, its right to do so is subservient to the public easement, and it can not make such use of the stream as will obstruct navigation or interfere with the operation of a ferry.

4. Ferry Landing—Damages to Land Owner—The only damages the owner of land on a navigable stream is entitled to claim for the condemnation of a ferry landing, is the fair market value of the land appropriated not to exceed a half acre, and the injury, if any, to the residue of the land from such taking. Evidence as to the damages to the land owners boom is incompetent, and can not be considered in estimating such damages.

5. Special Judges—Authority—Where the regular judge of a court is disqualified to act, a special judge appointed by the governor, has the right to preside so long as the disability of the regular judge continues.

R. W. MILLER for appellant.

## POINTS AND AUTHORITIES.

1. A ferry is a public highway and is established more for the public good than for the individual advantage of the grantee, (Farnam Water and Water Rights, Volume 1, pages 130 and 131; Brown v. Givens, 4 J. J. M., 30.)

2. Courts take judicial notice of navigable streams. (King v. American Transportation Co., Federal Cases, No. 7787.)

3. The Legislature has no authority to bestow upon a private individual, a right or privilege in or to, any of the public highways so as to prevent the public generally, from using or from exercising a concurrent right. (Enors v. Hamilton, etc., 24 Wis., 658.)

4. The charter of the appellee confers no power to use the waters of navigable streams for booms or storing logs.

5. The right of the public to the free, uninterrupted and unobstructed use of all navigable streams for any and all purposes of navigation is paramount to every other right, and every person is entitled to a reasonable use of the stream for purposes of navi-

gation. No person or company of persons can have any exclu-.sive right to use all, or any part of the stream to the exclusion of other proper or necessary uses. (Farnam on Water and Water Rights, Volume 1, pages 130 and 131; Brubaker v. Paul, 7 Dana, 428; Richmond and Lexington Turnpike Co. v. Rogers, 1 Duvall, 135; Williamsburg Boom Co. v. Smith, 84 Ky., 372; Alexander v. Asher, 10 Kentucky Law Reporter, 935; Cincinnati Cooperage Co. v. Commonwealth, 11 Kentucky Law Reporter, 629; Smith v. Atkins, 110 Kentucky 119).

6. Navigable streams are highways, and the public easement is paramount to the private right of the riparian proprietor. (Commissioners v. Lumber Co., 116 N. C., 731; State v. Narrows Island Club, 100 N. C., 477; Gould on Waters, 2nd Ed., Secs. 80, 81, 107, 108 and 110; Angell on Water courses, 541A.; Vol. 16, Amer. and Eng. Ency. of Law, page 226; Sullivan v. Jenegeau, 21 Fla., 264; State v. Glenn, 7 Jones (N. C.), 321; Watts v. Tattawassee Boom Co., 56 Mich., 301; Doucette v. Littlefalls Imp. and Nav. Co., 71 Minn., 206; Lee v. Holt, 5 Bliss, 338; Northwestern Packet Co. v. Atlee, 12 Amer. Law Register (N. S.), 561; Sheerlock v. Bainbridge, 13 Amer. Report, 302; Haywood v. Knapp, 23 Minn., 431; Gerish v. Brown, 51 Maine, 256; McPheters v. Log Driving Co., 78 Maine, 329; Stevens Point Boom Co. v. Riley, 44 Wis., 295, 46 Wis., 239.)

7. The construction and maintenance of a boom upon navigable waters is contrary to law, and no damage is recoverable for any injury thereto. (26 U. S. Stat. at Large, 426-454, chap. 907, Sec. 10; U. S. v. Bellingham Bay Co., 176 U. S., 211.)

8. The true test of damage for the taking of private property for public use is the value of the property taken, and the injury to the salable value of the property.

9. The authority of a special Judge ends with the life of the term of court at which he was selected or appointed. (Ky. Statutes, Sec. 968 and 971; Childers v. Little, 96 Ky., 376; Small v. Reeves, 104 Ky., 286.)

10. The verdict for $21,000 is so excessive as to show that it was given as the result of passion and prejudice.

11. It was misconduct for the jury to dine with appellee during the progress of the trial.

12. The case should have been remanded to the County Court when the Circuit Court had passed upon the rights involved in the appeal.

13. It was error to admit extraneous testimony as to the character of the men composing the jury to determine whether the jury was influenced by passion and prejudice in making its verdict.

14. It was error to permit members of the jury to testify that they were not influenced by passion and prejudice in arriving at their verdict, and that they thought the verdict proper.

15. It was error to admit testimony attempting to connect a stranger with the litigation, when that connection was not material, even if established.

16. It was error to admit testimony as to the personal relations between appellant and the president of appellee Company. The sole issue was one of damage, and that could not be affected by the personal feelings of the parties.

PENDLETON, BUSH & BUSH for appellee; J. A. SULLIVAN of counsel.

## POINTS AND AUTHORITIES.

1. A ferry is a continuation of the road, and the grant of the franchise and its exercise by the grantee, relate to the landing and the collection of tolls, and not to the question of navigation. (United States v. The William Pope, 28 Fed. Cas., 629, 630; United States v. The James Morrison, 4 N. Y. Leg. Obs., 333, 338; City of New York v. Starin, 12 N. E., 631, 632; Montgomery v. Mult Nomah Ry. Co., 3 Pac., 435; Hackett v. Wilson, 6 Pac., 652, 653; Averett v. Brady, 20 Ga., 523, 529; 12 A. & E. Ency. of Law, 1089, and cases there cited; Broadnax v. Baker, 55 Am. Rep., 634, 636; Babcock v. Herbert, 3 Ala., 392, Am. Dec., 696; Gould on Waters, Sec. 88; Lewis v. Keeling, 1 Jones, 299.)

2. The boom was not a purpresture or nuisance, but a lawful structure and in aid of navigation, for the destruction of which the appellee would be entitled to compensation (City of Boston v. Lecraw, 17 How., 433, (Marg. page); Revell v. People, 69 Am. St. Rep., 266; Berry v. Snyder, 3 Bu., 266; Miller v. Hepburn, 8 Bu., 332; Cruishank v. Wilmer, 93 Ky., 20; Williamsburg Boom Co. v. Smith, 84 Ky., 378; Shively v. Bowlby, 152, U. S., 40; Dutton v. Strong, 1 Blk. (U. S.), 31-33; Yates v. Milwaukee, 10 Wall., 504; I. C. R. R. Co. v. People of the State of Illinois, 146, U. S., 387-476, (L. C. P. Ed. page 1040); 24 A. & E. Ency. of Law, 979, 981; Leverich et al., v. Mayor of Mobile et al., 110 Fed. Rep., 175; Moore v. Sanborne, 59 Am. Dec., 212; Lorman v. Benson, 77 Am. Dec., 444 (see note); Lewis v. Portland, etc., 22 L. R. A., 737; Parker v. West Coast Packing Co., 5 L. R. A., 62; Delaplaine v. The Chicago N. W. Ry. Co., 24 Am. Rep., 389; Ryan v. Brown, 100 Am. Dec., 157; Pound v. Turch, 95 U. S., 459; Monongahela Navigation Co. v. United States, 148 U. S., 331-334; Thurman et al. v. Morrison et al., 14 B. M., 367, 375-6; Morrison v. Thurman, 17 B. M., 253; Smith

v. Atkins, et al., 110 Ky., 119, 22 Ky. L. R., 1620; Weisse v. Smith, 3 Or., 445, (8 Am. Rep., 621); Cooley Const. Lim., 680; Ensminger v. The People, 47 Ill., 384; Carlson v. St. L. R. D. and I. Co., 41 L. R. A., 371; Coyne v. Miss. & R. R. Boom Co., 41 L. R. A., 494; Cincinnati Cooperage Co. v. Commonwealth, 11 Ky. L. R., 629-30; Gould on Waters, Sec. 181; Stephens Point Boom Co. v. Reilly, 44 Wis., 295, 46 Wis., 237, 49 N. W., 978; Nester et al. v. Diamond Match Co., 105 Fed. Rep., 570; Watts v. Boom Co., 52 Mich., 203, 208, 17 N. W., 809; Payne Lumber Co., Lim. v. United States, 55 Fed. Rep., 864-872; 4 A. & E. Ency. of Law, 710.)

3. The verdict was not excessive, as the evidence brought before this Court will show.

4. It was not improper, under the circumstances, for the jury to dine with Captain J. M. Thomas, and even if it were, it was waived by not objecting at the time, and by appellant's counsel participating in the meal.

5. The Sheriff gave the proper instructions to the jury, if any were required to be given, and no objection was made thereto or exceptions saved.

6. The case should not have been remanded to the County Court for the issuance of the writ.

7. It was not material, even if error, for the Special Judge to hear testimony as to the character of the men composing the jury, or to permit members of the jury to say they were not influenced by passion or prejudice in arriving at their verdict, or to say that they thought the verdict proper. (Ky. Stat., Sec. 1805.)

8. The appointment of the Special Judge in this case was by the Governor, and does not come under the provisions of Section 968 of Kentucky Statutes, as construed by the cases of Childers v. Little, 96 Ky., 376, or Small v. Reeves, 104 Ky., 286; Small v. Reeves, supra, 971 Ky. Stat.; Act of March 22nd, 1902.)

OPINION BY JUDGE SETTLE.—Reversing.

Appellant, Anse Warner, and one J. C. Richards each made application to the Madison county court for a license to operate a ferry across the Kentucky river at Ford, a flourishing village, situated in Clark county. At that point the river constitutes the dividing line between the counties of Madison and Clark, and the operation of the ferry requires, of course, a landing on either side of the river. The land at the point of landing on the Madison side is owned by

appellant, and that on the opposite shore, in Clark county, by the appellee, Ford Lumber & Manufacturing Company. Richards had, however, obtained of the latter company a writing granting him the use of its ground for a ferry landing on the Clark side of the river. The contest over the ferry in the Madison county court resulted in the awarding of the privilege by that court to Richards. Appellant immediately took an appeal to the Madison circuit court, and that court upon hearing reversed the judgment of the county court and granted appellant the ferry franchise in question, but held that it would be necessary for him to acquire the ferry landing on the Clark county side of Kentucky river by condemnation, as appellee objected to his use of it for that purpose. To accomplish this object a writ of ad quod damnum was awarded appellant, which issued in the usual form. In the meantime appellee, Ford Lumber & Manufacturing Company, which had all the while been backing Richards in his contest with appellant over the ferry right, applied to the Clark county court for the privilege to operate a ferry at the same place and between the same points on the Kentucky river, and that court, notwithstanding the jurisdiction over the ferry privilege previously acquired, first by the county court, and later the circuit court of Madison county, was proceeding to act upon appellee's application, if not to grant it the ferry privilege, but was prevented from doing so by a writ of prohibition from the Madison circuit court, which upon appeal to this court was sustained by an affirmance of the judgment of the lower court. Clark county Court v. Warner, 116 Ky. 801 25 Ky. L. R. 857; 76 S. W. 828. The sheriff of Clark county, to whom the writ of ad quod damnum from the Madison circuit court had been directed, upon receiving it, summoned and duly impaneled a jury made up of citizens and freeholders of Clark county to assess the damages to which appellee would be

entitled for the condemnation of a ferry landing for appellant's use on its land in Clark county. The trial under the writ of ad quod damnum was had in the town of Ford, and the jury, after hearing the evidence and argument of counsel, returned a verdict fixing appellee's damages at $21,000. Upon the return of the writ and verdict to the Madison circuit court, appellant filed numerous exceptions to the finding of the jury, and the questions raised thereby were, at the instance of the special judge and by agreement of the parties, tried and determined, not upon bill of exceptions, but upon oral testimony as at the hearing before the sheriff, and the court entered judgment approving the verdict of the jury and confirming their award as to damages. After this action of the lower court appellant filed motion and grounds for a new trial. The motion for a new trial was overruled, to which appellant excepted, and this appeal followed.

The errors assigned are so numerous that we will not undertake to discuss them in detail, but will confine the opinion to such as we think compel us to reverse the judgment appealed from. In addition to the land proposed to be taken for the ferry landing on the Clark county side of the Kentucky river, which is the only feasible or available one at or near Ford, appellee owns and operates a line of booms extending along the river from below its lumber mills, which are situated a short distance down the river from the point of landing, for about a mile east and up the river, and in operating the ferry it will be necessary in order to effect a landing on the Clark county side, to pass through appellee's boom. We may also add in this connection that the Burt & Brabb Lumber Company owns lumber mills on the Madison county side of the river, that it, too, has a boom, which must also be cut or passed through in operating the ferry, but it is making no complaint. These booms are undoubtedly of great value to the owners, as they are

used for catching and storing logs which are sawed in the mills; indeed, they are indispensable to the profitable conduct of the lumber milling business. There is no difficulty in arriving at the value of that part of appellee's land which it is proposed to appropriate for a ferry landing. The parties and their witnesses agree that it is worth not less than $25, and certainly not more than $100. 'It is, however, contended by appellee that, as its deed covering the land in question calls to run with the low water mark on the Kentucky river, its title includes not only the land bordering on the river, but also the bed of the stream to the main thread of the middle channel, which entitles it to use the bank to the edge of the water and to maintain its boom on the surface of the water, and for these reasons it should, in addition to the value of the land taken, be compensated by appellee for injury to its boom and storage capacity within the boom. Indeed, the greater part of appellee's testimony was in respect to damage of this character. We do not accept this view of the case. The Kentucky river is a navigable stream, and its control as such has been transferred by the Legislature of the State to the Federal government. Its locks and dams are maintained at the expense of the Federal government, and its waters cannot be spanned by a bridge without the approval of the Congress of the United States. Its navigable character is judicially known to the courts of the State, and must be recognized by individuals. The public, for purposes of navigation, is entitled to the free and undisturbed use of every part of the stream from bank to bank, and of such accessibility with respect to the stream as to render it capable of navigation by boats or the floating of logs; and this, without regard to whether any part of the stream is occupied by booms. Therefore every one has an equal right to the navigable use of the water for all purposes of travel and transportation. King v. Amer-

ican Transportation Co., Fed. Cas. No. 7,787; Farman on Water and Water Rights, vol. 1, pp. 130, 131; Brubaker v. Paul, 7 Dana, 428, 32 Am. Dec. 111; Richmond & Lex. Turnpike Road Co. v. Rogers, 1 Duv. 135; Williamsburg Boom Co. v. Smith, 84 Ky. 372, 8 Ky. L. R. 369; 1 S. W. 765; Alexander v. Asher, 10 Ky. Law Rep., 935; Cincinnati Cooperage Co. v. Com., 11 Ky. Law Rep., 629.

A ferry is a public, rather than a private right, and has been aptly called a public highway across a stream of water by boat, instead of by bridge. A ferry privilege or franchise carries with it the idea of public service; for the owner or lessee of the franchise must conform to the statutory requirements of giving bond, operate the ferry according to statutory restrictions, and undertake to serve the public at all reasonable times. The fact that the owner of a ferry franchise may by condemnation acquire a landing and thereby take private property for public use by making just compensation therefor proves that a ferry is more for public than private use. Farnam, Water and Water Rights, vol. 1, pp. 130, 131; Brown v. Given, 4 J. J. Marsh, 30. Though the owner of a ferry, in operating it, performs a public service, with the incidents of monopoly and the right to levy toll, he has no exclusive right to the use of the stream crossed by his ferry. He has the same right to navigate it that every other citizen of the State enjoys, and such right cannot be made subservient to that of riparian owners to maintain booms upon the surface of the stream or near the bank, however necesssary the same may be to their business. We would not be understood as holding that a riparian owner may not have the use of a navigable stream for maintaining booms or other like appliances for use in business. We only mean to say that the use of a navigable stream for such purposes cannot be exclusive or inconsistent with the public easement. A fair statement of this

principle may be found in Williamsburg Boom Co.
v. Smith 84 Ky. 372 8 Ky. L. R. 369; 1 S. W. 765. The
action was one involving the right of a riparian owner
to occupy the river by means of booms or sheers, in
discussing which the court said: "Even if the land
of a riparian owner extends only to low-water mark,
yet, if he has a mill upon it, he may use the bank for
the purpose of receiving logs, and may construct a
logway or other structure extending into the river
for the purpose of facilitating their removal and thus
appropriating a portion of it, provided he does not
interfere with the easement of the public." The case
of Smith v. Atkins, 110 Ky. 119 22 Ky. L. R. 1619; 60
S. W. 930, 53 L. R. A. 790, 96 Am. St. Rep. 424, relied
on by appellee, is not in conflict with the views ex-.
pressed in this opinion. In the case supra, the plaintiff
sued to recover damages for injury to land bordering
on Big Blaine creek, caused by the act of the defend-
ants in entering thereon and without her consent tying
a boom to the trees on the bank, which caused large
quantities of logs, staves, ties, drift, and water to
accumulate against the boom and submerge and wash
away her land  The defendants admitted in part the
damage alleged, but among other matters of defense
pleaded that Blaine creek was a navigable stream, and
that for the purposes of navigation and to save their
logs   they   had   the   right   to   use   the   banks
and trees growing thereon without the consent of the
owner.  In the rejection of this contention, this court
held that the use of a navigable stream for the pur-
pose of navigation extended alone to the surface of
the stream, and not to the appropriation of the soil,
trees, and vegetation on the banks, and such an ap-
propriation is a taking of private property within
the meaning of the law, and cannot be done.

In the case at bar the appellant does not propose
any other use of the Kentucky river than the naviga-
tion of the stream, which is free to him, for operating

his ferry, and all others for the purposes of navigation, from bank to bank, and though he further proposes to appropriate enough of appellee's land on one side of the stream to make a ferry landing, it is to be done in the statutory manner by condemnation and after the payment of just compensation to the owner. The right to thus acquire the landing arises and is incident to the grant of the ferry privilege. While appellee may maintain its boom on the river by virtue of its ownership of the land bordering the stream, its right to do so is subservient to the public easement. It cannot, therefore, make such use of the stream with its boom or in the prosecution of its business as will obstruct navigation thereon or interfere with the operation of appellant's ferry. There is, therefore, no foundation in law or fact for appellee's claim to damages for the alleged injury that will result to its boom or business from the operation of appellant's ferry. The only damages to which it will be entitled are such as will result from the taking of its land for the ferry landing, which cannot, under the statute, exceed a half acre in quantity. The measure of damages will include the fair market value of the land appropriated and the injury, if any, to the residue of appellee's tract from the taking.

We are of the opinion that the testimony as to the injury that will result to appellee's boom or business from the operation of the ferry was incompetent and should have been excluded. The operation of the ferry will doubtless cause some injury to appellee's boom, but will not destroy it; for according to the evidence a ferry was for some time maintained at the place in controversy by Richards with appellee's consent, and it is not to be presumed that the same ferry in the hands of appellant will cause any greater injury to the boom or inconvenience to appellee than when it was under the control of Richards. At any rate, appellee is not entitled to be compensated for such

injury or inconvenience as it will suffer or be subjected to by the proper operation of the ferry, as they are incidental to the use of the stream by water craft for purposes of navigation.

Appellant's contention that the authority of the special judge who tried the case ended at the term at which he was appointed by the Governor is without support from the law. The regular judge being disqualified to act, under the specific authority conferred by his appointment, the special Judge had the right to preside at a subsequent term, and so long as the disability of the regular judge continued. Consequently the trial and decision of the case by him was proper. Duypoyster v. Clarke, Special Judge, 121 Ky.—90 S. W. 1, 28 Ky. Law Rep., 655.

There are some other errors and irregularities appearing in the record, which, while perhaps not sufficient of themselves to authorize a reversal, should not have occurred; but, as they are not likely to be repeated on a retrial of the case, we deem it unnecessary to pass upon them.

Being of opinion that the damages allowed appellee were excessive and otherwise improper, because predicated upon an erroneous basis, the judgment is reversed, and cause remanded for a new trial and further proceedings consistent with the opinion.